UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

APPROXIMATELY 13.98 Million USDT

Defendant In Rem.

Civ. No. 25-3943 (ABJ)

# BRIEF IN SUPPORT OF THE PLAINTIFF'S MOTION TO STRIKE POTENTIAL CLAIMANTS' KIMS PAPERS AND PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: Jafer Aftab
N.J. Bar No. 050341997
Assistant United States Attorney
United States Attorney's Office
District of Columbia
601 D Street, NW
Washington, DC 20530
(202) 252-6714
Jafer.Aftab@usdoj.gov

# TABLE OF CONTENTS

## Contents

**INTRODUCTION** .......... **1**

**PROCEDURAL HISTORY AND STATEMENT OF FACTS** .......... **1**

**ARGUMENT** .......... **3**

I. THE CIVIL ASSET FORFEITURE REFORM ACT OF 2000 TOGETHER WITH THE RELATION BACK DOCTRINE CREATED AN INNOCENT OWNER AFFIRMATIVE DEFENSE TO EXCLUSIVELY PROTECT TWO CLASSES OF CLAIMANTS: 1) PRIOR-TO-CRIME OWNERS WHO TAKE ALL REASONABLE STEPS TO AVOID CRIME THAT GIVES RISE TO FORFEITURE; AND 2) POST-CRIME OWNERS WHO HAVE NO REASON TO KNOW OF THE CRIME GIVING RISE TO FORFEITURE AND ARE BONA FIDE PURCHASERS FOR VALUE .......... 3

A. Longstanding controlling law in this Circuit holds that a general creditor as well as an unsecured creditor lack standing in forfeiture cases and CAFRA codified this caselaw; potential claimants manifestly lack standing. .......... 6

B. In keeping with the Constitution and CAFRA, the only possible claimant with standing as a statutory innocent owner here is the one from whom the specific property was stolen; potential claimants here are general unsecured creditors and had reason to believe there was a theft from the victim owner and therefore they have no standing as a matter of law. .......... 8

C. Prudential standing requires a potential claimant to be within the zone of narrow interests protected by the statute; the potential claimants are outside that zone and may seek their exclusive remedy with the Attorney General. .......... 14

D. A potential claimant who lacks standing is barred from filing any papers in a judicial forfeiture action let alone a motion for judgment on the pleadings. .......... 15

II. THIS IS AN ASSET FORFEITURE ACTION NOT A TREASURY ENFORCEMENT ACTION TO BLOCK ASSETS OF A FOREIGN STATE OR ACTORS. .......... 16

III. THIS COURT SHOULD ENTER PARTIAL JUDGMENT ON THE PLEADINGS IN THE FORM OF A PRELIMINARY ORDER OF FORFEITURE .......... 17

**CONCLUSION** .......... **18**

**Table of Authorities**

**Cases**


Bennis v. Michigan, 516 U.S. 442, 116 S. Ct. 994, 134 L.Ed.2d 68 (1996) .... 3
Food and Drug Admin. v. Alliance for Hippocratic Med., 602 U.S. 367, 144 S. Ct. 1540, 219 L.Ed.2d 121 (2024) .... 13
United States v. One-Sixth Share, 326 F.3d 36 (1st Cir. 2003) .... 7, 12
United States v. One 1973 Rolls Royce, 43 F.3d 794, 820 (3d Cir. 1994) .... 4
United States v. $299,218.48 in U.S. Currency, 719 F. Supp.3d 85 (D.D.C. 2019) ... 10, 12, 13, 14
United States v. $39,557.00 in U.S. Currency, 683 F. Supp.2d 335 (D.N.J. 2010) .... 14, 15
United States v. $7,559,358.09, 953 F. Supp.2d 549 (D.N.J. 2013) .... 9
United States v. $70,990,605, 234 F. Supp.3d 212 (D.D.C. 2017) .... 14
United States v. 2007 Mack 600 Dump Truck, 680 F. Supp.2d 816 (E.D. Mich. 2010) .... 17
United States v. 392 Lexington Parkway South, 386 F. Supp.2d 1062 (D. Minn. 2005) .... 10
United States v. 8 Gilcrease Lane, 641 F. Supp.2d 1 (D.D.C. 2008) .... 8, 14
United States v. 6124 Mary Lane Dr., 2008 WL 3925074 (W.D.N.C. 2008), aff'd sub nom., United States v. Munson, 477 F. App'x 57 (4th Cir. 2012), cert. denied, 568 U.S. 903, 113 S. Ct. 315, 184 L.Ed.2d 187 (2012) .... 8
United States v. A Parcel of Land (92 Buena Vista Ave.) 937 F.2d 98 (3d Cir. 1991), aff'd o.g., 507 U.S. 111, 113 S. Ct. 1126, 122 L.Ed.2d 469 (1993) .... 4
United States v. All Assets Held at Bank Julius Baer & Co., 772 F. Supp.2d 191 (D.D.C. 2011) .... 8, 12
United States v. All Assets Held at Bank Julius Baer & Co., 571 F. Supp.2d 1 (D.D.C. 2008) .... 17
United States v. All Funds in Account Nos. 747.034/278 (Banco Espanol de Credito) 295 F.3d 23 (D.C. Cir. 2002) .... 13
United States v. BCCI Holdings (Luxembourg), 46 F.3d 1185 (D.C. Cir. 1995) .... 6,7
United States v. BCCI Holdings (Luxembourg), 69 F. Supp.2d 36 (D.D.C. 1999) .... 6, 11, 12
United States v. BCCI Holdings (Luxembourg), 833 F. Supp. 29 (D.D.C. 1993) .... 9, 13
United States v. Carmichael, 419 F. Supp.2d 1376, 1379 (M.D. Ala. 2006) .... 6, 10
United States v. Cox, 575 F.3d 352 (4th Cir. 2009) .... 12
United States v. Fifty-Three Virtual Accounts, 2025 WL 2732705 (D.D.C. Sept. 25, 2025). 14, 16
United States v. Hooper, 229 F.3d 818 (9th Cir. 2000) .... 5
United States v. Jamieson, 2007 WL 275966 (N.D. Ohio 2007) .... 11, 12
United States v. Kennedy, 201 F.3d 1324 (11th Cir. 2000) .... 5
United States v. Lavin, 942 F.2d 177 (3d Cir. 1991) .... 11
United States v. Madoff, 2012 WL 1142292 (S.D.N.Y. Apr. 3, 2012) .... 10, 13
United States v. Martinez, 228 F.3d 587 (5th Cir. 2000) .... 5
United States v. Mondragon, 313 F.3d 862 (4th Cir. 2002) .... 17
United States v. Monzon, 2009 WL 361095 (S.D. Fla. Feb. 9, 2009) .... 9

United States v. Munson, 477 F. App'x 57 (4th Cir. 2012), cert. denied, 568 U.S. 903, 113 S. Ct. 315, 184 L.Ed.2d 187 (2012). ....... 11
United States v. O'Brien, 181 F.3d 105 (6th Cir. 1999) ....... 10
United States v. Ross, 161 F.4th 100, 110 (2d Cir. 2025) ....... 16
United States v. Rothstein (Pet. of C. 11 Tr. of RRA, P.A., 2010 WL 2730749 (S.D. Fla. July 9, 2010) ....... 9
United States v. Speed Joyeros, 410 F. Supp.2d 121 (E.D.N.Y. 2006) ....... 12
United States v. Timley, 443 F.3d 615 (8th Cir. 2006) ....... 5
United States v. Trafigura AG, 2008 WL 4057907 (S.D. Tex. Aug. 26, 2008) ....... 8

**Statutes**

18 U.S.C. § 1963(l)(6)(A)-(B) ....... 3
18 U.S.C. § 981(f) ....... 4
18 U.S.C. § 983(d)(2) ....... 4
18 U.S.C. § 983(d)(2)(A) ....... 7, 8
18 U.S.C. § 983(d)(2)(A)(i)-(ii) ....... 5
18 U.S.C. § 983(d)(3) ....... 11
18 U.S.C. § 983(d)(3)(A) ....... 10
18 U.S.C. § 983(d)(3)(A)(i)-(ii) ....... 6
18 U.S.C. § 983(d)(6)(B)(i) ....... 7, 12
18 U.S.C. § 983(i)(2)(A)-(E) ....... 4
19 U.S.C. § 1607 et seq. ....... 4
21 U.S.C. § 301 et seq. ....... 3
21 U.S.C. § 853(c) ....... 4
21 U.S.C. § 853(n)(6)(A)-(B) ....... 3
22 U.S.C. § 401 ....... 3
22 U.S.C. § 9201 et seq. ....... 3
50 U.S.C. § 1701 ....... 15
50 U.S.C. § 1701 et seq. ....... 3
50 U.S.C. § 1702 ....... 15
50 U.S.C. § 4301 et seq. ....... 3
Civil Asset Forfeiture Reform Act of 2000 ....... 3
Terrorism Risk Insurance Act of 2002 (TRIA), Pub. L. 107-297, 116 Stat. 2322 § 201(d)(2)(A) 16

**Rules**

28 C.F.R. § 9 ........................................................ 8, 13
28 C.F.R. § 9.9(a)(1)-(2) ........................................................ 8
Fed. R. Civ. P., Supp. R. G(2)(f) ........................................................ 17
Fed. R. Civ. P., Supp. R. G(8)(c)(i)(B)........................................................ 1
Fed. R. Civ. P., Supp. R. G(8)(c)(ii)........................................................ 15
Fed. R. Civ. P. 12(c)……………………………………………………………...17

## INTRODUCTION

The United States of America, by and through Jeanine Ferris Pirro, United States Attorney for the District of Columbia, and Jafer Aftab, Assistant United States Attorney, appearing, pursuant to Federal Rule of Civil Procedure, Supplemental Rule G(8)(c)(i)(B), moves to strike Yong Seok Kim and Han Kim (the potential claimants) papers improvidently lodged in this Court. The issue for the Court is whether these potential claimants, more appropriately described as general judgment creditors, who did not attempt to perfect their lien until well after the crimes giving rise to forfeiture and after the seizure as well as the filing of the civil forfeiture action, have standing to contest this civil forfeiture action. For the reasons set forth below, the potential claimants clearly do not have standing and their papers should be struck. Additionally, because these potential claimants and the other claimant both admit to the United States's facts supporting the claims for forfeiture, the United States also moves this Court for Partial Judgment on the Pleadings for a Preliminary Order of Forfeiture.[1]

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On November 14, 2025, the United States filed a Verified Civil Forfeiture Complaint asserting in detail that as part of a conspiracy ultimately culminating in a hacking theft that gave rise to a claim of proceeds forfeiture and money laundering facilitation forfeiture of the defendant property. See ECF Doc. 1.

---

[1] The United States does not concede standing to potential claimants Kims for the purpose of its motion for a Partial Judgment on the Pleadings for a Preliminary Order of Forfeiture, because the United States asserts the potential claimants lack standing to file pleadings. Regardless, even if the potential claimants were proper claimants, their admissions together with the other claimant's admissions, do not disturb the necessary event of a Partial Judgment on the Pleadings in the form of a Preliminary Order of Forfeiture.

On February 2, 2026, Claimant Huobi filed a Verified Claim as to all of the defendant property asserting itself as the innocent theft-victim owner to the United States's claims for forfeiture. See ECF Doc. 7.

On February 9, 2026, potential claimants, Han Kim and Yong Seok Kim, lodged nearly identical papers seeking to assert claims to the defendant property as general judgment creditors arising out of a civil action for which they obtained default judgment and later attached a generic lien on or about December 10, 2025, see ECF Docs. 8, ¶¶ 27-33, 52-56; ECF Doc. 9, ¶¶ 27-33, 52-56, nearly a month after the United States filed its civil forfeiture action on November 14, 2025. See ECF Doc. 1.

On February 23, 2026, Claimant Huobi filed an Answer admitting to the facts supporting the United States's forfeiture claims. See ECF Doc. 17, ¶¶ 1-79.

On February 27, 2026, potential claimants Kims jointly filed an Answer. Potential claimants admitted to the facts supporting the United States's forfeiture claims. See ECF Doc. 22, ¶¶ 1-75, 78. Potential claimants sought to assert a joint affirmative defense as innocent owners on the basis that they are judgment creditors who attached a lien on December 10, 2025, as set forth in their papers, fashioned as claims on the basis that it was property "blocked" under the International Emergency Economic Powers Act. See id. at ¶ 81.

On the same day, the potential claimants also lodged papers fashioned as a motion for a judgment on the pleadings. See ECF Doc. 23.

ARGUMENT

I. THE CIVIL ASSET FORFEITURE REFORM ACT OF 2000 TOGETHER WITH THE RELATION BACK DOCTRINE CREATED AN INNOCENT OWNER AFFIRMATIVE DEFENSE TO EXCLUSIVELY PROTECT TWO CLASSES OF CLAIMANTS: 1) PRIOR-TO-CRIME OWNERS WHO TAKE ALL REASONABLE STEPS TO AVOID CRIME THAT GIVES RISE TO FORFEITURE; AND 2) POST-CRIME OWNERS WHO HAVE NO REASON TO KNOW OF THE CRIME GIVING RISE TO FORFEITURE AND ARE BONA FIDE PURCHASERS FOR VALUE

As a matter of constitutional law and based on longstanding common law, there is no innocent owner defense to forfeiture and that is because of the longstanding common law rule that people must keep an eye on their belongings and prevent criminal use thereof. See generally Bennis v. Michigan, 516 U.S. 442, 116 S. Ct. 994, 134 L.Ed.2d 68 (1996). Well before Bennis,[2] a federal statutory framework was established in criminal forfeiture statutes that permitted only a narrow set of claimants to assert an innocent owner defense to avoid forfeiture to the United States: 1) those who are prior-to-the-crime innocent owners of the specific property who took all reasonable steps to prevent criminal use; and 2) those who are post-crime innocent owners who were reasonably without cause to believe or know of the crime and who innocently acquired the specific property as good faith purchasers for fair market value. Both prior or post-innocent owners must come forward as soon as possible to preserve any claim. See e.g., 18 U.S.C. § 1963(l)(6)(A)-(B) (RICO); 21 U.S.C. § 853(n)(6)(A)-(B) (drug crimes).

Four years after the Bennis decision, Congress enacted a parallel statutory innocent owner civil affirmative defense in the Civil Asset Forfeiture Reform Act of 2000 (CAFRA).[3]

---

[2] Bennis involved a state forfeiture action.

[3] Scholars and courts alike have referred to this parallel construction as creating a uniform innocent owner defense. It is only uniform insofar as it brings criminal and civil statutes more in accord; however, CAFRA exempts Section 983 from a large category of forfeiture matters from its purview. Specifically, exempted are several provisions of the United States Code: Title 19 (customs); Title 26 (revenue); 21 U.S.C. § 301 et seq. (FDCA); 22 U.S.C. § 401; 50 U.S.C. § 4301 et seq. (TWEA); 50 U.S.C. § 1701 et seq. (IEEPA) (emphasis added); Title 22 U.S.C. § 9201 et seq. (North Korea Sanctions Enforcement Act of 2016) (emphasis added). See 18

CAFRA was also a statutory overruling of a Third Circuit civil forfeiture case affirmed on other grounds in the United States Supreme Court that permitted a criminal to avoid forfeiture by transferring property to an innocent family member or donee. See United States v. A Parcel of Land (92 Buena Vista Ave.) 937 F.2d 98 (3d Cir. 1991), aff'd o.g., 507 U.S. 111, 113 S. Ct. 1126, 122 L.Ed.2d 469 (1993); and see United States v. One 1973 Rolls Royce, 43 F.3d 794, 820 (3d Cir. 1994) (urging redrafting of the civil forfeiture statute to account for those who acquire interests after-the-crime as the criminal forfeiture statutes have done). Congress did so and created parallel provisions in the civil forfeiture statute regarding the same two narrow classes of claimants in criminal forfeiture statutes relative to the forfeiture relation back doctrine. The relation back doctrine, which applies in both criminal and civil forfeiture, codified at 21 U.S.C. § 853(c) for criminal forfeiture and 18 U.S.C. § 981(f) for civil forfeiture, provides that when an act or omission, and in this context, a crime, gives rise to forfeiture of specific property related to that crime, an inchoate superior interest vests in the United States that becomes final with an administrative forfeiture decree or judicial forfeiture judgment.

Congress determined that for the purposes of the innocent owner affirmative defense, the interest in existence at the time of the crime giving rise to forfeiture is to be examined to determine whether one is an owner. See 18 U.S.C. § 983(d)(2). Here, claimant Huobi was the first party[4] owner of the defendant property at the time of the theft. Stated differently, claimant Huobi had a present interest at the time of the crime. In contrast, potential claimants Kims had no

---

U.S.C. § 983(i)(2)(A)-(E)(exempting whole categories of forfeiture from CAFRA provisions, including the burden of proof and eligibility for an innocent owner defense); and see 19 U.S.C. § 1607 et seq. (maintaining therefor a forfeiture process with a probable cause standard of proof without an innocent owner defense).

[4] It is useful to understand the matter in business transactional terminology: the owner here, especially because there is only one, is referred to as the first party; the criminal(s) as the second party; and the potential claimants as the third party.

interest in existence in the defendant property at the time of the crime. For completeness, the second party criminals also had no interest prior to the theft, but acquired criminal possession.

As for the two narrow classes of third-party innocent owners under CAFRA, the first class is prior-to-crime third party innocent owners. Congress determined that those who have a specific interest in the specific property acquired prior to the crime must: 1) not know of the conduct giving rise to forfeiture; and 2) upon learning of the conduct do all that reasonably could be expected under the circumstances to terminate such use. See 18 U.S.C. § 983(d)(2)(A)(i)-(ii). Moreover, any third-party claimant must promptly safeguard its interests by asserting a claim at the earliest opportunity. This logically entails initiating legal action immediately regardless of government action. In the event of a government seizure, this translates into filing a motion for a return of property specifically asserting a superior interest to the specific property to invoke the equitable jurisdiction of the Court. The post-seizure time point provides the first opportunity to contest state[5] action and the assertion by the state of a superior interest.

As for this first class of prior-to-crime third party ownership, the potential claimants do not assert such an interest nor could they. Alternatively, this first class is not applicable for third-parties such as the potential claimants Kims in this particular case. That is because potential claimants Kims and claimant Huobi all admit to the facts supporting the United States's claim of crime proceeds as well as derivative money laundering facilitation forfeiture.[6]

---

[5] This is a legal term of art that refers to government action whether federal, state, or local.
[6] Several Circuits have held in criminal forfeiture ancillary hearings that there cannot be a prior third party interest in a post-conviction criminal proceeds forfeiture, because criminal proceeds only come into existence upon the commission of the crime and since the crime has been proven by way of conviction, the United States's superior interest is proven to have vested at the time of the crime through the conviction, so a third party can never successfully challenge the forfeiture of the proceeds of crime as a prior owner. See United States v. Timley, 443 F.3d 615, 628-29 (8th Cir. 2006); United States v. Hooper, 229 F.3d 818 (9th Cir. 2000); United States v. Martinez, 228 F.3d 587, 590 (5th Cir. 2000); United States v. Kennedy, 201 F.3d 1324, 1331 (11th Cir. 2000).

As for the second class of post-crime innocent owners, Congress further determined that those who have an interest in the specific property after the crime must not know or be reasonably without cause to believe the specific property was subject to forfeiture and be a bona fide purchaser or seller for fair market value. See 18 U.S.C. § 983(d)(3)(A)(i)-(ii)[7]; see also United States v. BCCI Holdings (Luxembourg), 69 F. Supp.2d 36, 60 (D.D.C. 1999) (observing that the two classes of prior and post innocent owners are determined in reference to the time-point created by the relation back doctrine – the commission of the crime giving rise to forfeiture); and see United States v. Carmichael, 419 F. Supp.2d 1376, 1379 (M.D. Ala. 2006) (holding that the government's interest under the relation back doctrine vests when the crime giving rise to forfeiture begins not when it ends). No other class of persons is protected by the statute in terms of innocent owners.

## A. Longstanding controlling law in this Circuit holds that a general creditor as well as an unsecured creditor lack standing in forfeiture cases and CAFRA codified this caselaw; potential claimants manifestly lack standing.

In 1995, the United States Court of Appeals for the District Columbia reviewed an appellant claim that a "general creditor . . . should be thought of as 'bona fide purchasers.'" United States v. BCCI Holdings (Luxembourg), 46 F.3d 1185, 1191 (D.C. Cir. 1995). The Court found the "claim . . . anomalous on its face" explaining that a general creditor has no interest in

---

These criminal forfeiture cases are analogous in this particular case, because the potential claimants admit to the United States's claims for crime proceeds and derivative money laundering facilitation forfeiture. Therefore, this civil forfeiture case is procedurally the same as a criminal forfeiture case with a conviction insofar as they both present the same stage of having the basis for a Preliminary Order of Forfeiture.

[7] Congress reaffirmed this innocent owner defense scheme again in the criminal antiterrorism forfeiture laws. See e.g.,18 U.S.C. § 987(terrorism) (referencing the civil forfeiture innocent owner defense Section 983(d)).

specific property and only in an estate as a whole and therefore can have no interest in particular assets forfeited, as required by the RICO forfeiture statute. Id. The Court went on to hold:

> [A] general creditor can never have an interest in specific forfeited property, no matter what the relative size of his claim vis-avis the value of the defendant's post forfeiture-estate. Were it otherwise, the court litigating the forfeiture issue would be converted into a bankruptcy court and would not be able to grant forfeiture to the government until it determined that no general creditor would be unable to satisfy its claim against the defendant. That result is patently at odds with the statutory scheme, which directs parties without an interest in specific property to seek relief from the Attorney General. Id.

Additionally, the Court correctly held that a "third party's claim is to be measured not as it might appear at the time of the litigation, but rather as it existed at the time of the illegal acts were committed." Id. at 1190. Thus, potential claimants' assertion that they are lien judgment general creditors is incorrect, because their frame of reference is at the time of this litigation. Rather, they are unsecured creditors, because they did not perfect their lien until after the time of the beginning of the crime giving rise to forfeiture – indeed they only did so after this civil forfeiture action was filedr, which is naturally after the time of seizure which took the specific property out of the hands of the debtor.

The enactment of CAFRA in 2000 codified these holdings in the civil forfeiture statute. Importantly, the post-crime innocent owner civil affirmative defense is measured from the time of the crime giving rise to forfeiture and specifically does not include as an owner a person with general unsecured interests in or claim against the specific property of another. See 18 U.S.C. § 983(d)(2)(A), 983(d)(6)(B)(i). General creditors and unsecured creditors are disqualified as owners and lack standing; this is well-established in the caselaw and the statute itself. See BCCI Holdings (Luxembourg), supra; accord United States v. One-Sixth Share, 326 F.3d 36, 44-45 (1st Cir. 2003) (holding that the family of a murder victim with an in personam judgment against a property owner has no secured interest in any particular asset and therefore lacked standing to

contest the forfeiture of specific property and requiring murder victim family to apply for a Petition for Remission); United States v. All Assets Held at Bank Julius Baer & Co., 772 F. Supp.2d 191, 199 (D.D.C. 2011) (holding that a person with an in personam judgment against the wrongdoer lacks standing to contest the forfeiture of the wrongdoer's property because the judgment gives him no interest in the specific asset subject to forfeiture); United States v. 8 Gilcrease Lane, 641 F. Supp.2d 1, 5 (D.D.C. 2008) (holding that a general unsecured creditor is not an owner under § 983(d)(6) and therefore lacks standing); United States v. Real Property Located at 6124 Mary Lane Dr., 2008 WL 3925074, at *3 (W.D.N.C. 2008) (holding that 18 U.S.C. § 983(d)(6) overrules any pre-CAFRA case granting standing to unsecured creditors to file claims in civil forfeiture cases), aff'd sub nom., United States v. Munson, 477 F. App'x 57 (4th Cir. 2012), cert. denied, 568 U.S. 903, 113 S. Ct. 315, 184 L.Ed.2d 187 (2012). Thus, the potential claimants manifestly lack standing and this Court should strike their papers for two independent reasons: they are general creditors, and they are unsecured creditors for the purposes of this action. The Court need not proceed further.

As set forth above, those outside these two narrow zones of protected interests in the innocent owner affirmative defense must apply to the Attorney General for a petition for remission or mitigation, pursuant to 28 C.F.R. § 9. The petition regulations conform with the statutory design and caselaw and provide that in assessing a petition an owner has first priority compared to a second priority lienholder. See 28 C.F.R. § 9.9(a)(1)-(2).

B. In keeping with the Constitution and CAFRA, the only possible claimant with standing as a statutory innocent owner here is Claimant Huobi.

As recited above, to qualify for the statutory innocent owner civil affirmative defense as a prior owner, an examination of the owner's interest at the time of the crime is required. See 18 U.S.C. § 983(d)(2)(A). Thus, an examination of Claimant Huobi's interest at the time of the theft

is required. Routinely, a victim-owner from whom specific property is criminally taken without consent by way of theft, embezzlement, or robbery is deprived of the opportunity to take prior reasonable steps to prevent criminal use. In such cases, the Courts have recognized, including this Court, that the victim of the theft does not voluntarily relinquish superior right, title, and interest to the specific property. See United States v. BCCI Holdings (Luxembourg), 833 F. Supp. 29, 31-32 (D.D.C. 1993) (holding that the victim-owner of an embezzlement may assert a claim only if it can trace its property to the forfeited funds and striking a claim if not); United States v. $7,559,358.09, 953 F. Supp.2d 549, 556 (D.N.J. 2013) (holding that company that was the victim of theft had standing); United States v. Rothstein (Pet. of C. 11 Tr. of RRA, P.A., 2010 WL 2730749, *4 (S.D. Fla. July 9, 2010) (determining standing for trustee from whom property was taken from him involuntarily); United States v. Monzon, 2009 WL 361095, *2 (S.D. Fla. Feb. 9, 2009) (recognizing robbery victim's superior interest in stolen funds); United States v. Trafigura AG, 2008 WL 4057907, *3-4 (S.D. Tex. Aug. 26, 2008) (recognizing that the Iraqi government has standing to assert a claim as the victim-owner of theft). Indeed, the potential claimants in their joint Answer (as well as Claimant Huobi) admit to the United States's facts supporting the claims for forfeiture on the basis of theft and subsequent money laundering. Accordingly, this Court should enter Partial Judgment on the Pleadings in the form of a Preliminary Order of Forfeiture. See Section III, infra.

Under the above caselaw, the innocent owner here is the theft-victim owner, see BCCI, supra, Holdings, 833 F. Supp. 29, 31-32 (D.D.C. 1993); $7,559,358.09, supra; Rothstein, supra; Trafigura AG, supra, who appeared as a claimant, and who does not appear to have voluntarily relinquished superior, right, title and interest. Given that a Preliminary Order of Forfeiture should issue for the Plaintiff's Claims for Forfeiture, Claimant Huobi is then put to their proof that it

took all reasonable steps to prevent criminal use to establish preponderate evidence to the innocent owner affirmative defense to avoid the United States's forfeiture claims.

Returning to the second class of post-crime innocent owners, the third-party potential claimants Kims here must establish that they were without cause to believe that there was a theft crime giving rise to forfeiture of the defendant property. It is uncontested that the conspiracy giving rise to the crime occurred and that the hacking theft of Claimant Huobi's funds occurred in 2023, the relevant time point for reference. See Carmichael, supra. According to the potential claimants, they recorded a generic lien on December 10, 2025, after the seizure, and a month after the filing of the civil forfeiture complaint on November 14, 2025. Once the Verified Complaint was filed in open court it is impossible for the potential claimants to argue that they reasonably were without cause to believe that there was a theft crime giving rise to forfeiture of the defendant property, as required by 18 U.S.C. § 983(d)(3)(A); see United States v. 392 Lexington Parkway South, 386 F. Supp.2d 1062, 1068 (D. Minn. 2005) (requiring examination of "without reason to know" requirement as separate from the bona fide purchaser requirement). The potential claimants therefore fail the first prong of the second class of post-crime innocent owners, which should end the inquiry. See United States v. O'Brien, 181 F.3d 105 (6th Cir. 1999) (holding that because potential claimant failed the first prong of establishing a legal interest as a matter of state law, there was no need to reach the bona fide purchaser prong); United States v. $299,218.48 in U.S. Currency, 719 F. Supp.3d 85, 94 (D.D.C. 2019) (determining that a general judgment creditor is an unsecured creditor without standing until and unless he obtains a judgment lien on specific property in debtor's possession and that general lien has no effect anyway if the property is no longer in the debtor's possession by virtue of the government seizure); United States v. Madoff, 2012 WL 1142292, *5 (S.D.N.Y. Apr. 3, 2012) (holding that

attorney who never perfected a lien under state law lacked standing and likewise cannot satisfy the first prong).

The potential claimants also fail the second prong because they have not asserted they are a bona fide purchaser for fair market value. See 18 U.S.C. § 983(d)(3); see generally United States v. Lavin, 942 F.2d 177, 185-86 (3d Cir. 1991) (holding that a bona fide purchaser for fair market value is a well-established commercial law term referring to one who is excepted from the relation back doctrine); Munson, supra, 477 F. App'x at 67-68 (4th Cir. 2012) (same). The potential claimants assert that they attempted to lodge a lien from a default judgment; however, such a lien is not a purchase and the potential claimants also did not provide fair market value consideration for the lien here. In commercial law, a claimant must establish that fair market value was given in exchange for the interest in the specific property in an arm's length transaction. In the context of this case, the potential claimants must basically assert that they did not come to the fencer and get a hot deal; rather, they truly had no idea of the theft and purchased the defendant property for fair market value. The potential claimants make no such showing. They did not purchase the defendant property. Instead, they assert that they, acting through counsel, obtained default judgment on an in personam action, and in the ordinary course of legal business, attempted to lodge or perfect a generic lien against the Democratic People's Republic of Korea, see ECF Docs. 8, 9, ¶¶ 52-61. However, that is not a purchase nor is there any showing of fair market value exchange for the lien where the defendant property is valued as set forth in the caption at $13.98 million. See BCCI Holdings (Luxembourg), supra, 69 F. Supp.2d at 61 (holding that a judgment creditor who obtains a lien on defendant's property is not a bona fide purchaser for value because he did not give fair market value in exchange for the lien irrespective of how the antecedent debt came into existence); United States v. Jamieson, 2007

WL 275966, *6 (N.D. Ohio 2007) (holding that a person who converts his debt to a judgment and attaches a judgment lien to the defendant's property after it becomes subject to forfeiture cannot recover under the bona fide purchaser for value prong); and see United States v. Cox, 575 F.3d 352, 356-57 (4th Cir. 2009) (determining that appropriate value must be given for the specific asset and possession of an interest from a legal settlement agreement in the general assets of the husband was not specific as to the forfeited property).

The United States does not contest the pain and suffering the potential claimants endured; however, despite these sympathies, they do not have a legally cognizable claim to the defendant property. In the marquis case on this issue, Judge Weinstein recognized that there may be sympathetic potential claimants out there, including general judgment creditors who attach their lien "too late," but the law is the law. See United States v. Speed Joyeros, 410 F. Supp.2d 121, 125 (E.D.N.Y. 2006) (judgment creditor who attached or did not perfect his lien in time and was "too late in the day" is neither a prior innocent owner or a posterior innocent owner but a general unsecured creditor who is not an owner and lacks standing); $299,218.48 in U.S. Currency, supra, 719 F. Supp.3d at 94 (D.D.C. 2019) (determining that a general judgment creditor is an unsecured creditor without standing until and unless he obtains a judgment lien on specific property in debtor's possession and that lien has no effect if the property is no longer in debtor's possession by virtue of the government seizure). Indeed, the statute specifically disqualifies general judgment creditors, like the potential claimants here, as not an owner, and therefore the potential claimants have no standing. See 18 U.S.C. § 983(d)(6)(B)(i); One-Sixth Share, supra; All Assets Held at Bank Julius Baer & Co., supra; Jamieson, supra. This position flows naturally from the Constitutional rule to keep an eye on your specific property, codified by the relation back doctrine, and the CAFRA rule to take all reasonable steps to prevent criminal use of

specific property to be able to establish oneself as a matter of statute as an innocent owner. Moreover, even if the potential claimants could have perfected their lien in a timely fashion, they cannot establish a purchase for fair market value, and they lack priority over the theft-victim-owner Claimant Huobi. The exclusive remedy for the potential claimants is a petition for remission with the Attorney General. See 28 C.F.R. § 9.

Civil forfeiture is by its very nature an in rem action concerned with specific property named as the defendant. See United States v. All Funds in Account Nos. 747.034/278 (Banco Espanol de Credito) 295 F.3d 23, 25 (D.C. Cir. 2002). All potential claimants must keep track of any interest they may have in specific property and promptly take steps to preserve those interests. Id. Those who do not have no place in a forfeiture action which usually takes place well after the crime. Even a victim-owner of crime who cannot trace its interest to the defendant property has no place in a forfeiture action. See BCCI Holdings (Luxembourg), supra, 833 F. Supp. at 31-32.

It is worth emphasizing here as a matter of fundamental fairness that in the context of cryptocurrency tracing is a heavy undertaking. The United States brings its claims of forfeiture after a heavy undertaking and it brings forth this action in full right seeking justice. Here, the only apparent valid claimant-intervener is the theft-victim-owner, who may be able satisfy the narrow class of innocent owners under the statute. Comparing these two in rem litigants, the plaintiff and the claimant, with the potential claimants, who rise out of in personam claim with a default judgment, generates a palpable feel that the potential claimants are out of place, undertaking no effort to trace, and cutting in rather abruptly to assert an inapposite interest. See Madoff, supra; $299,218.48 in U.S. Currency, supra. Even a cursory review of their lien language demonstrates that it is generic and lacking in specificity and demonstrates that their

eyes have not been focused on the specific assets that constitute the defendant property here until very recently. It is respectfully submitted that their late effort is misplaced and falls short.

C. Prudential standing requires a potential claimant to be within the zone of narrow interests protected by the statute; the potential claimants are outside that zone and may seek their exclusive remedy with the Attorney General.

Standing has a number of dimensions. Constitutional standing examines whether there is a sufficient injury-in-fact, one that is imminent and concrete and not too attenuated and speculative. See generally Food and Drug Admin. v. Alliance for Hippocratic Med., 602 U.S. 367, 144 S. Ct. 1540, 219 L.Ed.2d 121 (2024); United States v. $70,990,605, 234 F. Supp.3d 212, 239 (D.D.C. 2017). In the development of caselaw, statutory standing has referred to the examination of whether there is statutory procedural compliance, see 8 Gilcrease Lane, supra, 641 F. Supp.2d at 5-6, and prudential standing has referred to the examination of whether the litigant is within the zone of interests protected by the statute.[8] See United States v. $39,557.00 in U.S. Currency, 683 F. Supp.2d 335, 341, 344 (D.N.J. 2010) (examining the interplay of all forms of standing). Claimant Huobi may be able to establish constitutional standing through their injury-in-fact given that the defendant property was stolen directly from them and the caselaw that recognizes their standing. By contrast, the potential claimants' constitutional standing showing is attenuated at best. See United States v. Fifty-Three Virtual Accounts, 2025 WL 2732705, *4-5 (D.D.C. Sept. 25, 2025) (reaffirming holding that general judgment creditor as well as Terrorism Risk Insurance Act (TRIA) litigants lack constitutional as well as statutory standing); $299,218.48 in U.S. Currency, supra.

---

[8] Given that the terms statutory standing and prudential standing are both integrally tied to the statute, it is respectfully suggested that it may be better for the development of caselaw to instead refer to these categories as "procedural statutory standing" and "substantive statutory standing."

The civil forfeiture innocent owner statute creates two dimensions of standing: 1) procedural compliance; and 2) substantive zones of statutory interests to be protected. See $39,557.00 in U.S. Currency, supra. An application of several legislative canons reveals that the legislative scheme, as described above, and purpose was to create a narrow innocent owner defense. The plain language evinces that clear legislative intent. The statute expresses two classes of innocent owners and excludes all else. Moreover, where Congress clearly sought to protect the narrow interests of truly innocent owners, it would be an absurd result for the theft-victim owner (Claimant Huobi) with the innocent ownership claim to the specific property to be supplanted by or lose priority to (the potential claimants) a general judgment creditor who attempted to perfect a generic lien without fair market value consideration after the crime and even after the forfeiture action was filed. The clear legislative intent of the forfeiture law is to protect the United States's interest by removing crime proceeds and specific property involved in money laundering from circulation and the specific theft victim-owner who can trace its interest and may seek avoidance of forfeiture in a judicial action or through the restoration/remission process with the Attorney General.

D. A potential claimant who lacks standing is barred from filing any papers in a judicial forfeiture action let alone a motion for judgment on the pleadings.

Here, after the United States brought its civil forfeiture action, the theft-victim owner appeared as the claimant. The United States was poised to proceed with a partial motion for a judgment on the pleadings prior to the potential claimants filing. The potential claimants have no standing to file any papers in this Court, let alone a motion for a judgment on the pleadings.

Appropriately, Federal Rule of Civil Procedure, Supplemental Rule G(8)(c)(ii) mandates that when the United States moves to strike a potential claimant, any papers or moving papers lodged by potential claimant/s must be held in abeyance until the potential claimant proves their

standing by a preponderance of the evidence. See United States v. Ross, 161 F.4th 100, 110 (2d Cir. 2025). As set forth above, the law is clear that the potential claimants have no standing here.

## II. THIS IS AN ASSET FORFEITURE ACTION AND THE ASSETS WERE NOT BLOCKED AS DEFINED BY THE TERRORISM RISK INSURANCE ACT OF 2002

The United States is proceeding under Titles 18 and 28[9] through the Department of Justice with a seizure pursuant to civil asset forfeiture laws on claims setting forth reasonable bases of thieving criminal conduct with additional money laundering. The potential claimants admit these facts underlying the claims of forfeiture in their joint Answer. This admission tautologically establishes that they lack standing and it is impossible from this as well for them to establish standing.

Additionally, according to the plain language of the statute itself under Section 201(d)(2)(A) of TRIA, the United States did not "block assets." Furthermore, from a statutory scheme perspective, an IEEPA or North Korea Sanctions Act forfeiture, does not provide an innocent owner defense. See n. 3, supra. All in all, it is not possible for the potential claimants to establish themselves as innocent owners under the civil forfeiture statute. The United States acted pursuant to the asset forfeiture laws and the potential claimants themselves admit it. Lastly, it is well-established and recently reaffirmed that TRIA does not permit avoidance of the forfeiture standing requirements. See Fifty-Three Virtual Accounts, supra.

[9] The Terrorism Risk Insurance Act of 2002 (TRIA), Pub. L. 107-297, 116 Stat. 2322, at § 201(d)(2)(A) defines blocked assets as any asset seized or frozen by the United States under Section 5(b) of the Trading With the Enemy Act under Title 50 or under Section 202 and 203 of the International Emergency Economic Powers Act under 50 U.S.C. §§ 1701, 1702.

## III. THIS COURT SHOULD ENTER PARTIAL JUDGMENT ON THE PLEADINGS IN THE FORM OF A PRELIMINARY ORDER OF FORFEITURE

The United States further moves this Court for a Partial Judgment on the Pleadings, because the United States's Verified Complaint sets forth detailed facts supporting claims that create reasonable beliefs that the defendant property is forfeitable, and the other litigants admit to those facts. Applying the rule for judgment on the pleadings, this Court should therefore enter a Partial Judgment on the Pleadings in the form of a Preliminary Order of Forfeiture.

The United States has complied with Federal Rule of Civil Procedure, Supplemental Rule G(2)(f) and set forth detailed facts to establish a reasonable belief that its two claims for forfeiture can establish a substantial connection to the defendant property at trial. See generally United States v. Mondragon, 313 F.3d 862, 865, 867 n. 1 (4th Cir. 2002); accord United States v. All Assets Held at Bank Julius Baer & Co., 571 F. Supp.2d 1, 16 (D.D.C. 2008)(following Mondragon). Where the factual allegations are reviewed by litigants and admitted, Federal Rule of Civil Procedure 12(c) provides that a Judgment on the Pleadings is appropriate. Cf. United States v. 2007 Mack 600 Dump Truck, 680 F. Supp.2d 816 (E.D. Mich. 2010) (deeming admissions from failure to file an Answer). Here, the litigants explicitly admit to the facts supporting the two forfeiture claims in the United States's Verified Complaint. Compare ECF Doc. 1, ¶¶ 1-79 with ECF Doc. 17 ¶¶ 1-79, ECF Doc. 22 ¶¶ 1-75, 78. Accordingly, this Court should enter Partial Judgment on the Pleadings in the form of a Preliminary Order of Forfeiture.

## CONCLUSION

The United States respectfully submits that the law requires this Court to strike the potential claimants' improvidently lodged papers fashioned as a claim for lack of standing. Additionally, this Court should grant the United States's motion for Partial Judgment on the Pleadings for a Preliminary Order of Forfeiture. Should this Court grant both motions, Claimant Huobi can then proceed with its Affirmative Defense.