**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 25-CV-3943 |
| APPROXIMATELY 13.98 MILLION | ) |
| USDT, | ) JURY TRIAL DEMANDED |
| | ) |
| Defendant in rem, | ) |
| | ) |
| HAN KIM and YONG SEOK KIM, | ) |
| | ) |
| Claimants. | ) |
| | ) |

**RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY**

i

**RESPONSE**

In this case, the Government seeks to forfeit the Defendant Property, a digital-ledger balance of approximately 13.98 million Tether tokens (USDT), which was "fr[ozen]" at the request of "law enforcement," ECF No. 1 ¶ 70, because that property constitutes the proceeds of wire fraud committed by the Democratic People's Republic of Korea ("North Korea"), *id.* ¶ 3. Claimants Han Kim and Yong Seok Kim obtained state-law liens on the property and filed verified claims in this case, ECF Nos. 7, 8, contending that because the Defendant Property is "blocked" by the International Emergency Economic Powers Act (IEEPA), the Kims' lien defeats the Government's forfeiture claim under *Estate of Levin v. Wells Fargo Bank, N.A. ("Levin II")*, 156 F.4th 632, 638 (D.C. Cir. 2025), *e.g.* ECF No. 26 at 16–20. The Government moved to strike, arguing that the Kims are not "innocent owners" under the forfeiture laws because they are "general creditors," ECF No. 15-1 at 3-15, and that because the Government did not "block[]" the Defendant property *by filing this case* the property is not "blocked," *id.* at 16. The Government did not contest that the Defendant Property was frozen prior to the filing of this case, ECF No. 1 ¶ 70; the Government did not contest that the Defendant Property meets the definition of a "blocked" asset, *compare* ECF No. 15-1 at 16, *with* ECF No. 26 at 18; and the Government did not contest the validity of the Kims' state-law lien, *see generally* ECF No. 15-1.

The United States nonetheless submits[1] that *United States v. Gutierrez-Ochoa*,

---

[1] The Government did not seek leave to file its notice of supplemental authority and did not seek the Kims' position on a request for leave. The Government makes brand-new argument in its notice. ECF No. 31. And so its filing is an improper

No. 25-CR-035, 2026 U.S. Dist. LEXIS 94390 (D.D.C. April 29, 2026), reached two "holdings [that are] applicable to the case at bar": First, that "a seizure of property conducted pursuant to Titles 18 and 21 are [*sic*] not at all 'blocked assets' [*sic*] for the purposes of TRIA," ECF No. 31 at 1; and, second, that where a "claimant's only interest at the time of the offense was an unexecuted judgment and an in personam judgment[,] that did not create any interest in the particular property," *id.* These holdings are inapplicable and, even if dicta in *Gutierrez-Ochoa* applied here, that dicta is incorrect and contradicts both precedent and the Government's consistent position.

*First*, the reasoning of *Gutierrez-Ochoa* does not apply here because in that case "the record lack[ed] any indication of any restriction on defendant's ability to sell the . . . property, [or] spend [it] freely . . . prior to his arrest" and "[t]he Forfeited Assets were therefore not restricted at all, let alone 'subject to a significant restriction." *Gutierrez-Ochoa*, 2026 U.S. Dist. LEXIS 94390 at *42 (citation omitted). By contrast, here "law enforcement . . . requested that Tether implement *a freeze* on [the Defendant Property]" nearly a year before this case was filed, ECF No. 1 ¶ 70 (emphasis added). At the time this case was filed, then, the property was "frozen" and, as the Government *conceded* in its motion to strike, met the definition of

---

surreply. *E.g.*, *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 277 (D.D.C. 2002) (questioning whether law, new or otherwise, could ever qualify for surreply and denying request to file one where party otherwise forfeited argument). This Court could, therefore, simply ignore the Government's filing. But because the Government's arguments are without merit, the Kims respond to them here, and respectfully request the Court's leave to do so.

"blocked" property under TRIA. And in *Gutierrez-Ochoa* the claimants relied on no more than an "unexecuted judgment against the Juárez Cartel" to defeat the Government's forfeiture. *Gutierrez-Ochoa*, 2026 U.S. Dist. LEXIS 94390 at *54. But the Government here does not challenge the Kims' *liens on the Defendant Property* and so, as the Kims explained, ECF No. 26 at 20, this Court does not need to address the question whether TRIA allows the holder of an unexecuted judgment to prevail over the Government. The reasoning of *Gutierrez-Ochoa* thus does not apply to the different facts here.

*Second*, to the extent that *Gutierrez-Ochoa* said in dicta that the property there was not "blocked" under TRIA because the Government had not specifically described *that property* as "blocked," that reasoning is incorrect.

Under clear precedent and the text of the relevant statutes and regulations, "all assets belonging to an entity that satisfies [the] definition of [a terrorist party] are *automatically* blocked." *Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 137 (2d Cir. 2016) (emphasis added), *abrogated on other grounds in Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018); *see also Levin II*, 156 F.4th at 638 (holding that any property in the U.S. of a terrorist party meets the definition of "blocked assets" of a terrorist party because "when property of designated persons comes 'within the United States' or 'the possession or control of U.S. persons,' it is 'blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in'" (quoting 31 C.F.R. § 594.201(a))). That is, "regardless of whether that entity [whose property is at issue] is included on the [specifically-designated-nationals] List or [the executive order]

3

List, if Defendants satisfy [the executive order]'s definition of [the state sponsor], their assets are blocked and, therefore, subject to attachment under TRIA § 201." *Kirschenbaum*, 830 F.3d at 132. That was the position of the both the claimants and the Government in *Gutierrez-Ochoa* as well. 2026 U.S. Dist. LEXIS at *41 (noting the Government's position that the relevant property were "blocked assets" because the owner "is a designated entity and it may have had an interest in both assets, [and therefore] those assets may have become blocked by operation of law"). To Plaintiffs' knowledge, the Government's litigation position and the *Kirschenbaum* holding had not been questioned in this Circuit or any other.

Nonetheless, the court in *Gutierrez-Ochoa* concluded that "neither side is correct" that the property was blocked by operation of law, *id.*, but its reasoning directly conflicts not only with the binding authority mentioned and the Government's consistent position, but also with actual practice.[2] For instance, the *Gonzales-Ochoa* court reasoned that the property should not be considered blocked by operation of law because "[t]he criminal forfeiture statutes and procedural rules nowhere contemplate . . . that when a criminal defendant, whose assets are forfeited, turns out to be designated under IEEPA, . . . obtaining a specific OFAC license before a court may make an appropriate modification of the forfeiture order [is necessary]."

---

[2] The *Gutirrez-Ochoa* court's decision to reject the position of both parties also contradicts the Supreme Court's recent admonition that "[f]ederal courts adhere to the principle of party presentation." *Margolin v. Nat'l Ass'n of Immigr. Judges*, No. 25-767, 2026 LX 273700, at *3 (May 26, 2026) (reversing a Court of Appeals decision that similarly ruled on grounds not advanced by either party and reminding courts of the "rule that points not argued will not be considered" (quotation marks omitted)).

4

*Id.* at 43. But that is indeed what IEEPA requires, and what the consistent practice of the United States has been for that reason. In *Levin II*, for instance, the D.C. Circuit noted that the Government "sought a license from OFAC for the purpose of perfecting civil *in rem* forfeiture of the Blocked Funds" there. 156 F.4th at 637 (quotation marks removed). The *Levin II* court also noted that in a prior criminal forfeiture case in the Fifth Circuit, the Government had "sought and obtained an OFAC license to allow it to pursue the forfeiture," *id.* at 641 (citing *United States v. Holy Land Foundation for Relief & Development*, 722 F.3d 677 (5th Cir. 2013)).

Although TRIA permits turnover *to Plaintiffs* of the property at issue in this proceeding without first obtaining an OFAC license, the fact that no license is required to turnover the assets to the Plaintiffs does not mean the subject property is not "blocked" under IEEPA.  As the Second Circuit has made explicit, no OFAC license is required for a court to issue an order disposing of property to parties holding judgments for acts of international terrorism. *Harrison v. Republic of Sudan*, 838 F.3d 86, 98 (2d Cir. 2016) ("Because the funds at issue in all three turnover orders were subject to turnover pursuant to the TRIA, plaintiffs were not required to obtain an OFAC license before seeking distribution."). That, too, has been the consistent position of the Government. *Id.* (confirming Government position). For the reasons explained in Plaintiffs' prior briefing, the subject property is blocked by operation of law (and, unlike in *Gutierrez-Ocha*, the property here was specifically frozen as well). To the extent that *Gutierrez-Ochoa* rejected the proposition that assets of a terrorist party in the United States are not automatically blocked by operation of law, that

conclusion is incorrect, is without support from relevant caselaw, and departs from the Government's consistent position without sufficient justification. It should not be adopted.

Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
GERSTEIN HARROW LLP
1319 F Street NW, Suite 301
Washington, DC 20004
charlie@gerstein-harrow.com
(202) 670-4809

*/s/ Jason Harrow*
Jason Harrow
GERSTEIN HARROW LLP
12100 Wilshire Blvd. Ste. 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293

*/s/ Robert Tolchin*
Robert Tolchin
THE BERKMAN LAW OFFICE LLC
829 E. 15th Street, Suite Seven
Brooklyn, New York 11230
rtolchin@berkmanlaw.com
(718) 855-3627

*Attorneys for Claimants Han Kim and Yong Seok Kim*